IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| J.W. and M.W.,<br><br>Plaintiffs,<br><br>v.<br><br>BLUECROSS BLUESHIELD of TEXAS,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 1:21-cv-21<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiffs J.W. and M.W. sued BlueCross BlueShield of Texas, asserting two claims under ERISA (the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*): (1) a claim for payment of improperly denied benefits, and (2) a claim for violations of the Mental Health Parity and Addiction Equity Act. Defendant moves to dismiss both claims under Federal Rule of Civil Procedure 12(b)(6). The court grants the motion.

## I.

Defendant is the insurer, claims administrator, and fiduciary of a fully insured employee welfare benefits plan under ERISA. *See* Dkt. No. 2 ¶¶ 2–3. The plan provides mental health coverage, among other benefits. *See id.* ¶ 2. J.W. is a participant of this plan and his son, M.W., is a beneficiary. *See id.* ¶ 3.

M.W. was admitted to Evoke at Entrada on January 4, 2018, for "ongoing struggles with substance abuse, depression, anxiety, anger issues, and family conflict." *Id.* ¶ 9. He received treatment at Evoke until March 21, 2018. *See id.* ¶ 4. Immediately following his treatment at

Evoke, M.W was admitted to Live Strong House on March 21, 2018, and remained there until March 29, 2018. *See id.*

Defendant denied benefits for M.W.'s treatment at Evoke between January 4th and January 16th, explaining that "[t]his service is excluded under [J.W.'s] Health Care Plan." *Id.* ¶ 10. J.W. submitted a level one appeal on March 8, 2019, arguing that Defendant had previously paid a portion of the treatment before requesting that the payment be returned. *See id.* ¶ 11. J.W. further argued that although some explanations of benefits had stated that treatment was denied because it was not pre-authorized, the terms of the plan did not allow denial on this ground but instead imposed only a $250 penalty for failure to obtain pre-authorization. *See id.* ¶ 12. On June 7, 2019, Defendant upheld the denial, stating that Evoke was "found to be a Wilderness Program" and that M.W.'s treatment there did "not meet the definition of a residential treatment stay as it is billed." *Id.* ¶ 16.

The letter explained that "[l]icensure as a Residential Treatment Center (RTC) and confirmation of 24-hour nursing presence and Medical Doctor (M.D.) access is required." *Id.* Since Evoke did not meet these criteria, Defendant determined that "no benefits are available, and the claims will be adjusted to deny as not a benefit of the contract." *Id.* Further, the letter included the plan's definition of a residential treatment center which "means a facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service." *Id.* "It does not include half-way houses, wilderness programs, supervised living, group homes, boarding houses, or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities." *Id.*

J.W. then filed a second level one appeal arguing that Defendant failed to adhere to ERISA's requirements (such as providing him with all documents required by law) and changed its denial rationale. *See id.* ¶¶ 17–18. He further asserted that Evoke qualified as a "behavioral health practitioner" under the plan and "was a licensed and accredited program with the state of Utah to provide mental and behavioral healthcare to adolescents and complied with the rigorous requirements necessary to obtain such certifications." *Id.* ¶ 19. The complaint alleges that "Evoke is licensed by the State of Utah as an Outdoor Youth Treatment Program." *Id.* ¶ 16 n.1. J.W. argued that "it was 'wildly inaccurate' to refer to Evoke as simply a wilderness program as it was an outdoor behavioral health program which provided clinically appropriate, evidence-based care that was necessary to effectively treat M.W.'s dual diagnosis of mental health and substance abuse disorders." *Id.* ¶ 20. Finally, he claimed that Defendant violated the Parity Act by imposing more restrictive requirements for mental health treatment than for analogous medical or surgical treatments. *See id.* ¶¶ 21–23. Defendant responded on January 17, 2020, stating that Plaintiffs had already exhausted their internal appeals and that the June 7, 2019 letter was the final denial. *See id.* ¶ 24.

Plaintiffs further allege that Defendant denied payment for M.W.'s treatment at Live Strong House in a series of explanations of benefits, purportedly for failure to timely file and lack of information. *See id.* ¶ 27. On January 2, 2020, J.W. initiated a level one appeal, arguing that these claims were timely filed. *See id.* ¶¶ 28–30. Defendant failed to respond and, on April 16, 2020, J.W. filed a complaint with the Texas Department of Insurance. *See id.* ¶¶ 32–33.

J.W. received a response from the Department on May 12, 2020. *See id.* ¶ 35. In that letter, the Department relayed that Defendant had determined that Live Strong House "is not licensed to bill for residential treatment services" and stated that the Department could not

"compel the company to pay claims for a facility that is not licensed by the appropriate state and local authority to provide such service." *Id.* The Department's response also included a letter from Defendant dated May 1, 2020. *See id.* ¶ 36. That letter stated that the appeal had been missed and appropriate "feedback" had been provided to the responsible parties. *Id.* The letter further explained that "Live Strong House was not licensed to bill for residential treatment services and thus the claims had been correctly processed," citing the plan's definition for a residential treatment center. *Id.* The complaint alleges that Live Strong House "has a license from the State of Utah to provide residential support services." *Id.* ¶ 36 n.2.

Plaintiffs then instituted this action, claiming that Defendant breached the insurance contract and caused over $170,000 in damages relating to unpaid treatment costs. *See id.* ¶ 38.

## II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff cannot satisfy this standard by offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (cleaned up). Nor will the court "accept as true a legal conclusion"—even if it is "couched as a factual allegation." *Id.* (cleaned up). Rather, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up).

Although "[t]he 'usual rule' is 'that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss,'" *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (citation omitted), a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not

4

dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

## III.

The court first addresses Plaintiffs' claim for payment of benefits under 29 U.S.C. § 1132(a)(1)(B). This provision creates a private cause of action for a participant or beneficiary of a plan governed by ERISA "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." It follows that the benefits for which a plaintiff seeks payment must be due "under the terms of the plan." *IHC Health Serv., Inc. v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, No. 2:17-CV-01327-JNP-BCW, 2018 WL 3756959, at *3 (D. Utah Aug. 8, 2018) (quotation omitted). "[I]f the benefits in question do not arise under the terms of the plan, the plaintiff has no claim under this subsection." *Id.*; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (explaining that "ERISA was enacted . . . to protect contractually defined benefits" (quotation omitted)).

Defendant submitted copies of both the 2018 and 2019 versions of the employee benefit plan with its motion to dismiss. *See* Dkt. 15-2 & 15-3. The court will consider the terms of the plan because it is referred to in the complaint, central to the Plaintiffs' claims, and neither party disputes the authenticity of these copies. *See Jacobsen*, 287 F.3d at 941.

The plan specifies the coverage it provides for medically necessary treatment of chemical dependency, serious mental illness, and mental health. And it makes clear that "[a]ny services or supplies not specifically defined as Eligible Expenses in this Plan" are excluded. Dkt. No. 15-2 at 66, 69. For each of these types of treatment, covered inpatient services are categorized as either "hospital services" or "Behavioral Health Practitioner services." *Id.* at 10–11. In addition,

"Medically Necessary services" for mental health care or serious mental illness in a "Psychiatric Day Treatment Facility, a Crisis Stabilization Unit or Facility, a Residential Treatment Center for Children and Adolescents, or a Residential Treatment Center in lieu of hospitalization [are] considered [an] Inpatient Hospital Expense." *Id.* at 49. An inpatient hospital expense includes all medically necessary services offered by the facility. *See id.* at 78.

The plan defines a residential treatment center as "a facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service." *Id.* at 85. This "does not include half-way houses, wilderness programs, supervised living, group homes, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities." *Id.* Further, patients at such a facility must be "medically monitored with 24 hour medical availability and 24 hour onsite nursing service." *Id.*

Conversely, a "Behavioral Health Practitioner" is "a Physician or Professional Other Provider who renders services for Mental Health Care, Serious Mental Illness or Chemical Dependency, only as listed in this Benefit Booklet." *Id.* at 71. Thus, inpatient treatment for mental health conditions is only covered if offered at a hospital facility, including a residential treatment center, or by a "Behavioral Health Practitioner" as defined by the plan.

Accepting the factual allegations in the complaint as true, the court concludes that Plaintiffs have failed to plead facts supporting a reasonable inference that M.W.'s treatment at either Evoke or Live Strong House was covered under the plan. In particular, although the plan covers medically necessary mental health care at a residential treatment center, *see id.* at 49,

Plaintiffs have failed to plead that either Evoke or Live Strong House was a residential treatment center as defined by the plan.

The plan requires that a residential treatment center have 24 hour onsite nursing service. *Id.* at 85. The complaint does not allege that either Evoke or Live Strong House meet this requirement. And during oral argument, Plaintiffs' counsel conceded that neither facility offers such service. It follows that neither Evoke nor Live Strong House qualifies as a residential treatment center under the terms of the plan.

In addition, Live Strong House is licensed as a residential support program, not a residential treatment center. *See* Dkt. No. 2 ¶ 36 n.2. The governing statute makes clear that "[t]reatment is not a necessary component of a residential support program"; rather, such programs "arrange[] for or provide[] the necessities of life as a protective service." Utah Code § 62A-2-101(39)(a) & (c). It follows that Live Strong House is not "licensed by the appropriate state and local authority to provide" "a defined course of therapeutic intervention and special programming in a controlled environment" and thus does not meet the plan's definition of a residential treatment center. Dkt. No. 15-2 at 85.[1]

Nor do Plaintiffs argue—let alone plausibly allege—that either facility qualifies as one of the other types of *facilities* that are permitted to offer in-patient mental health treatment. And certainly neither facility qualifies as a "Behavioral Health Practitioner." This phrase is defined as

---

[1] Though it presents a closer question, the same may be true of Evoke as well. Evoke is licensed not as a residential treatment center but as an "outdoor youth program," Dkt. No. 2 ¶ 16 n.1, which means a program that provides "(i) regular therapy, including group, individual, or supportive family therapy; or (ii) informal therapy or similar services, including wilderness therapy, adventure therapy, or outdoor behavioral healthcare," Utah Code § 62A-2-101(33)(c). It is not clear that this necessarily is a license to provide intervention and programming in a "controlled environment." Dkt. No. 15-2 at 85. The court need not decide this question, however, given counsel's concession that Evoke does not provide 24-hour onsite nursing services.

"a Physician or Professional Other Provider who renders services for Mental Health Care, Serious Mental Illness or Chemical Dependency, only as listed in this Benefit Booklet." *Id.* at 71. And a "Professional Other Provider" is defined as "a person or practitioner, when acting within the scope of his license and who is appropriately certified," in one the occupations expressly listed by the plan. *Id.* at 83. It is thus clear that Behavioral Health Practitioners are *individuals* not *facilities*. *See id.*

Because Plaintiffs have failed to plead that M.W. received inpatient mental health treatment at a facility authorized by the plan to provide such care, they have failed to plead a claim for payment of benefits under the terms of the plan.

**IV.**

The court next addresses Plaintiffs' claim under the Parity Act. In pertinent part, this statute requires that "treatment limitations applicable to . . . mental health or substance use disorder benefits" be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). The plan also cannot have "separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." *Id.* The Act's definition of a "treatment limitation" includes "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment." *Id*. § 1185a(a)(3)(B)(iii). The enacting regulations make clear that this includes "nonquantitative treatment limitations" such as "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative" and "[r]estrictions based on geographic location, facility type, provider specialty,

and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 C.F.R. § 2590.712(a) & (c)(4)(ii).

For purposes of comparing treatment limitations, the regulations establish various "classifications" of levels of care and within each classification require consistent treatment of mental health or substance abuse care, on the one hand, and of medical or surgical care, on the other hand. *See id*. § 2590.712(c)(2)(ii)(A). Corresponding administrative guidance specifically equates residential treatment with skilled nursing facilities and rehabilitation hospitals. *See* Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008; Technical Amendment to External Review for Multi-State Plan Program, 78 Fed. Reg. 68240, 68247 (Nov. 13, 2013) ("For example, if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.").

To state a Parity Act claim, Plaintiffs must "(1) identify a specific treatment limitation on mental health benefits; (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits; and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog." *Johnathan Z. v. Oxford Health Plans*, No. 2:18-CV-383-JNP-PMW, 2020 WL 607896, at *13 (D. Utah. Feb. 7, 2020). Measured against this standard, Plaintiffs have failed to allege a Parity Act violation with respect to any of their contentions.

First, Plaintiffs contend that Defendant applies medical necessity criteria to claims for mental health care in a manner that deviates from generally accepted standards or is more

stringent than how it applies medical necessity criteria to claims for medical or surgical treatment. While such a discrepancy certainly could support a Parity Act claim, the complaint makes clear that M.W.'s claims were not denied on medical necessity grounds. Instead, the denials related to preauthorization and where the treatment took place. For this reason, even if the court were to conclude that Defendant's application of the medical necessity criteria violated the Parity Act, that ruling would not redress Plaintiffs' injuries. It follows that Plaintiffs' lack standing to raise this challenge. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 339 (2016).

Next, Plaintiffs argue that the plan requires preauthorization requirements for mental health and substance abuse treatment but not for analogous medical or surgical care. The plan does require preauthorization for "[a]ll inpatient treatment of Chemical Dependency, Serious Mental Illness, and Mental Health Care." Dkt. No. 15-2 at 27. But preauthorization is also required for "[a]ll inpatient admissions" and "Extended Care Expense." *Id.* And "Extended Care Expenses" include "charges incurred for those Medically Necessary services and supplies provided by a Skilled Nursing Facility, a Home Health Agency, or a Hospice," meaning that preauthorization is required for treatment at such facilities. *Id.* at 46, 75.

The complaint alleges that there is "no [preauthorization] requirement . . . on inpatient rehabilitation," however. Dkt. No. 2 ¶ 55. But although the plan does not specifically address "inpatient rehabilitation," it clearly requires preauthorization for "*all* inpatient admissions"— which would of course include rehabilitation. Dkt. No. 15-2 at 27 (emphasis added). It follows that Plaintiffs fail plausibly to allege disparate preauthorization requirements.

Plaintiffs further allege that although residential treatment centers are analogous to skilled nursing facilities, the plan treats residential treatment centers differently from skilled nursing facilities. Specifically, Plaintiffs allege that it requires residential treatment centers to

10

have "24 hour onsite nursing service" but imposes no such requirement for skilled nursing

facilities. *See* Dkt. No. 2 ¶ 57. But although the plan may not impose this requirement for skilled

nursing centers explicitly, it requires that skilled nursing facilities be "[l]icensed in accordance

with state law" or "Medicare or Medicaid eligible as a supplier of skilled inpatient nursing care."

Dkt. No. 15-2 at 86. And both Utah law and Medicare require a skilled nursing facility to provide

24 hour nursing service. *See* 42 U.S.C. § 1395i-3(b)(4)(C)(i) ("[A] skilled nursing facility must

provide 24-hour licensed nursing service . . . ."); *see also* Utah Admin. Code R432-150-5(2) ("A

skilled level of care facility must provide 24-hour licensed nursing services.").

Thus, at least as this provision is applied to Utah facilities, there is no disparity with

regard to the 24-hour onsite nursing services requirement between residential treatment centers

and skilled nursing facilities. And federal regulations make clear that a plan does not violate the

Parity Act by expressly requiring certain requirements for mental health treatment when those

same requirements are mandated by state licensing for analogous medical services. *See* 29 C.F.R.

§ 2590.712(c)(4)(iii) (Example 7).

Plaintiffs also allege that the plan requires more onerous licensing requirements for

residential treatment centers than for skilled nursing facilities. This assertion is not supported by

the terms of the plan. The plan requires that a skilled nursing facility be licensed by the State

where it is located if state law provides for licensing of such facilities. *See* Dkt. No. 15-2 at 86.

But if state law does not provide for licensing, then the facility must be Medicare or Medicaid

eligible. *See id.* Similarly, the plan requires that a residential treatment center providing mental

health care or substance abuse treatment "be licensed in the state where it is located *or* accredited

by a national organization." *Id.* at 85 (emphasis added). In each case, the facility must thus be

licensed by the State or approved by a national organization or program. Plaintiffs do not allege

that eligibility for Medicare is meaningfully more lenient than accreditation by a national organization.

Because the Parity Act requires only that nonquantitative treatment limitations for mental health benefits be "*comparable to*" and "applied no more stringently than for medical/surgical benefits," 29 C.F.R. § 2590.712(c)(4)(iii) (Example 4) (emphasis added), Plaintiffs have failed plausibly to allege that the minor difference between the Plan's licensing requirements for residential treatment centers and its analogous requirements for skilled nursing facilities violates the statute.

Finally, Plaintiffs allege that Defendant applied a nonquantitative treatment limitation based on "facility type" and denied the claims "based on the physical environment where the treatment took place." Dkt. No. 2 ¶¶ 53–54. If the plan would in fact deny coverage at a facility that otherwise meets the requirements of residential treatment center solely because that facility was designated a "wilderness program," that type of facility-based restriction could very well violate the Parity Act. *See* 29 C.F.R. § 2590.712(c)(4)(ii)(H).

Ruling on this issue would not redress Plaintiffs' injury, however, because regardless of whether Evoke and Live Strong House were wilderness programs, neither facility otherwise met the requirements of a residential treatment center as defined in the Plan because both lacked 24-hour onsite nursing services and Live Strong House, at least, also lacked the requisite state license. It follows that Plaintiffs' lack standing to raise this challenge. Plaintiffs have thus failed to state a Parity Act claim with respect to any of the supposed disparities they allege.

\*       \*       \*

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.[2]

**IT IS SO ORDERED.**

DATED this 22nd day of July, 2022

_____

Howard C. Nielson, Jr.
United States District Judge

---

[2] This action is dismissed with prejudice. Plaintiffs have not filed a motion for leave to amend, *see Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999), and, given Plaintiffs' concessions during oral argument, it is doubtful that that the shortcomings that the court has identified in Plaintiffs' claims could be cured by an amendment in all events.

Plaintiffs also argue that their complaint should not be dismissed because Defendant failed to provide various documents that it was legally obligated to. *See* Dkt. No. 22 at 10–12. These documents pertain to Defendant's medical necessity criteria and nonquantatitive treatment limitations. *See* 29 C.F.R. § 2590.712(d). But as explained above, Plaintiffs lack standing to challenge Defendant's medical necessity criteria and any facility-based exclusions.